REYNA FINANCIAL CORPORATION, APPELLANT, V. LEWIS SERVICE CENTER, INC., ET AL., DEFENDANTS AND THIRD-PARTY PLAINTIFFS, AND REYNOLDS AND REYNOLDS COMPANY, THIRD-PARTY DEFENDANT, APPELLEES.

429 N.W.2d 380

Filed September 23, 1988.   No. 87-006.

Gary F. Wence and Mark F. Enenbach, of McGrath, North, O'Malley & Kratz, P.C., for appellant.

T.J. Hallinan, of Law Offices of Cobb & Hallinan, P.C., for appellees Lewis Service Center et al.

BOSLAUGH, WHITE, and SHANAHAN, JJ., and HOWARD, D.J., and COLWELL, D.J., Retired.

PER CURIAM.

This case arises out of a lease agreement between Reynolds and Reynolds Company and the defendant Lewis Service Center, Inc., dated March 17, 1982. The agreement provided for the lease of computer equipment and programming to the defendant for a term of 7 years, with the defendant obligated to pay 84 monthly installments of $1,724.77. The agreement further provided an option to the defendant Lewis Service Center to purchase the equipment for $1 at the expiration of the

lease term. The obligation of Lewis Service Center under the agreement was personally guaranteed by defendant Gerald B. Lewis, the president of the defendant corporation. On July 16, 1982, the agreement and guaranty were assigned by Reynolds to the plaintiff, Reyna Financial Corporation.

A dispute developed between the parties with respect to the performance of the equipment, and none of the payments due under the agreement were paid. This action was commenced on November 17, 1983, to replevin the equipment and recover the amounts due under the agreement "less any amounts realized on resale of the equipment."

The equipment was voluntarily returned to the plaintiff, so the action proceeded as one to recover only the amounts alleged to be due the plaintiff. Reynolds was joined as a third-party defendant.

The case was submitted to the jury on issues of performance and substantial performance. The evidence was conflicting and presented a jury question on those issues. The jury returned a verdict in favor of the plaintiff in the amount of $52,529.04 and a verdict in favor of Reynolds.

The defendants filed a motion for judgment notwithstanding the verdict, which the trial court sustained on December 1, 1986. The trial court found that the Uniform Commercial Code applied to the transaction between the parties; that the notices of sale of the equipment were not sufficient; and that the defendants were entitled to judgment. The plaintiff has appealed.

The plaintiff's principal assignment of error is that the trial court erred in sustaining the motion for judgment notwithstanding the verdict because there was no issue as to whether the lease agreement was intended as a security interest. The review in this court is complicated by the fact that although a pretrial hearing was held and, apparently, a pretrial order entered, the pretrial order does not appear in the record. The issues specified at the pretrial conference control the course of the action and, unless altered by the trial court, constitute the issues upon which the case is tried. *Malerbi v. Central Reserve Life*, 225 Neb. 543, 407 N.W.2d 157 (1987).

None of the pleadings which are in the record referred to the

Uniform Commercial Code other than the defendants allegation that the contract was "unconscionable within the meaning of § 2-302 U.C.C." The defendants' pretrial conference memorandum described the action as "a suit for collection of a debt created by execution of a master lease . . . ." None of the defenses asserted referred to a failure of the plaintiff to give adequate notice of the sale of the property.

Just before the trial commenced, the plaintiff offered an amended "Pretrial Conference Memorandum" which stated that the equipment had been sold for $40,500. The defendants objected and, apparently, moved to strike the memorandum or, in the alternative, to continue the trial. After a lengthy discussion and argument in chambers, the defendants' motion was overruled. The trial court then made the following statement for the record:

THE COURT: Regarding the filing of the amended pretrial order, so that there's no misunderstanding, the Court will grant leave to file that. I don't think that that raises any intricate issues that are not [sic] a surprise to the defendant. The Court feels that if it was — that if there is anything, it's a waiver on behalf of the defendant not to raise — whether the sale was commercially reasonable. Just so that there's a record made.

During the trial both parties offered evidence concerning the sale of the equipment. The plaintiff produced letters to the defendants notifying them when each item of the equipment would be sold. Frank Ludu, a credit analyst employed by the plaintiff, when recalled as a witness by the defendants, testified that each item of equipment was sold on the *date of the letters* notifying the defendants as to when the equipment would be sold.

At the close of the plaintiff's evidence, and again at the close of all of the evidence, the defendants moved to dismiss on several grounds, including the failure of the plaintiff to prove that the sales of the equipment were commercially reasonable and made after proper notice. These motions were overruled. During the argument on the motion to dismiss at the close of all of the evidence, there was further discussion as to whether the sale of the equipment and the notices of sale were in issue. The

record shows the following:

> MR. WENCE: Your Honor, the plaintiff didn't put on any evidence concerning the reasonableness of the sale because our understanding that a pretrial order eliminated that as a relevant issue in this case, that there had been a waiver of that affirmative defense on the issue of commercial reasonablyness (sic).
>
> MR. COBB: Where is that?
>
> MR. WENCE: I believe that's in the minutes that we had at the bench the first — right at the outset of the trial.
>
> THE COURT: I said you were permitted to do it. I said I didn't think that waived any of the pleadings. I think you indicated to me that you did not —
>
> MR. WENCE: Right, and there's no — there's no —
>
> THE COURT: — that you did not have to do it because of the contract.
>
> MR. WENCE: Did not have to do?
>
> THE COURT: You did not have to dispose of the property in a — you know, it was up to you as to however you wanted to dispose of the property.
>
> MR. WENCE: Oh.
>
> THE COURT: That was my understanding.
>
> MR. WENCE: I understand.
>
> THE COURT: I just indicated to you that I didn't think that changed, that your pretrial memo, the amendment, changed any of the pleadings. That's what Mr. Cobb was objecting to, and I said I didn't think that that did.

During the instructional conference the defendants attempted to amend their answer by adding a paragraph alleging that " 'the plaintiff failed to give proper notice of the sale of the security,' and, two, 'that the plaintiff failed to sell said computer in a commercially reasonable manner or reasonably commercial — commercially reasonable price.' " That motion was overruled.

The defendants also submitted a requested instruction concerning the sale of the equipment, which was refused.

So far as the lease agreement itself is concerned, it is clear that under Neb. U.C.C. § 1-201 (Reissue 1980) the lease was, as a matter of law, one intended for security. In that respect the

statute provides:

> (37) "Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. . . . Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) *an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.*

(Emphasis supplied.)

Under the statute the plaintiff, as the secured party, was required to prove compliance with Neb. U.C.C. § 9-504(3) (Reissue 1980) as a condition to recovering a deficiency judgment. In *DeLay First Nat. Bank & Trust Co. v. Jacobson Appliance Co.*, 196 Neb. 398, 402, 243 N.W.2d 745, 748 (1976), we held: " 'Compliance with the Uniform Commercial Code for notification as to the disposition of collateral is a condition precedent to a secured creditor's right to recover a deficiency.' "

In *Butte State Bank v. Williamson*, 215 Neb. 296, 299, 338 N.W.2d 598, 600 (1983), we held:

> The bank's complaint that the court improperly allowed the untimely amendment of defendant's answer so as to assert lack of notice as a defense is legally insignificant. Compliance with the notice requirements of § 9-504(3) being a condition precedent to the bank's right to recover a deficiency judgment, it was incumbent upon it to have proved the fact, irrespective of defendant's answer.
>
> Having failed to carry its burden of proof, the bank, on the facts elicited in the trial, is not entitled to a deficiency judgment as a matter of law.

The letter-notices, copies of which were received in evidence, referred to sales which would take place 14 days after the dates of the letters. Ludu, however, testified that each sale took place on the date of the letter. Yet, the issues as to the commercial reasonableness of the sales and the adequacy of the notices were

not submitted to the jury.

Upon the record presented, we believe the plaintiff was entitled to rely on the ruling of the trial court that the commercial reasonableness of the sales and the adequacy of the notices were not issues in the case. For that reason the judgment is reversed and the cause remanded for a new trial on those issues and only those issues.

If upon a new trial it is determined that the sales of the equipment were commercially reasonable and made after adequate notice to the defendants, the verdicts shall be reinstated; if not, the judgment shall be for the defendants.

REVERSED AND REMANDED WITH DIRECTIONS.